UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ANDREA L. SMITH,**

**Plaintiff,**

**v.**

**PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, et al.,**

**Defendants.**

**Civ. No. 24-1455 (ADC)**

**OPINION AND ORDER**

## I. Introduction

Before the Court are two dueling motions for summary judgment, one filed by plaintiff Andrea L. Smith ("plaintiff") and the other by defendants the Puerto Rico Aqueduct and Sewer Authority ("PRASA") and its insurer, MAPFRE PRAICO Insurance Company ("MAPFRE" and together with PRASA, "defendants"). **ECF Nos. 19, 20**. Plaintiff's motion seeks partial summary judgment adjudicating PRASA's liability for the damages she suffered when she injured her ankle by tripping while walking on a sidewalk with an uncovered water meter. **ECF No. 19**. Defendants' motion seeks the complete dismissal of the action for want of subject-matter jurisdiction—specifically, because plaintiff's purported damages do not exceed the $75,000 threshold required for diversity jurisdiction. **ECF No. 20**. The parties each responded to the other's motion, **ECF Nos. 22, 23**, and plaintiff filed a reply in support of her motion, **ECF No. 24**.

This Opinion and Order concerns defendant's motion (**ECF No. 20**). For the reasons set forth below, the Court **DENIES** the motion.

## II. Legal Standard

### A. Factual challenges to federal subject-matter jurisdiction.

The accepted means of raising a challenge to a federal court's subject-matter jurisdiction is through a motion under Fed. R. Civ. P. 12(b)(1). *See Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 362-65 (1st Cir. 2001). Said challenges, because of their nature, can be raised at any time. Fed. R. Civ. P. 12(h)(3). There are facial challenges, which attack the sufficiency of the jurisdictional allegations in a complaint, and factual challenges, which deny the facts underlying the purported existence of jurisdiction. *Valentín*, 254 F.3d at 363. While facial challenges are subject to the same standard as Fed. R. Civ. P. 12(b)(6) motions, which involves taking all well-pleaded allegations in the complaint as true, the standard for factual challenges requires an evidentiary inquiry. *Id.* What shape this inquiry takes depends on "whether the relevant facts, which would determine the court's jurisdiction, also implicate the elements of the plaintiff's cause of action." *Torres-Negrón v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007). If not, then the Court is "free to weigh the evidence and satisfy itself as to existence of its power to hear the case." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). But if the merits and jurisdictional questions are intertwined, then "the district court should employ the standard applicable to a motion for summary judgment." *Id.*, at 163 (quoting *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)); *see also Guzmán v. Hamilton Rsrv. Bank*, No. CV 24-1467 (GMM), 2025 WL 2322444

(D.P.R. Aug. 12, 2025) (employing summary judgment standard to intertwined factual jurisdictional challenge).

**B. Summary Judgment under Fed. R. Civ. P. 56.**

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). "Where . . . a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." *Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010) (citing *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996)).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S.

133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Rule 56(c) states, in pertinent part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." L. Civ. R. 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). *Id.* Local Rule 56(e), for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of

evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

## III. Discussion

Defendants appear to raise a factual challenge to the Court's subject-matter jurisdiction under 28 U.S.C. § 1332(a). They contest the assertion that the amount in controversy exceeds $75,000 as is required for this Court to exercise diversity jurisdiction. In her complaint, plaintiff claimed physical and moral damages of no less than $300,000 and demanded payment of no less than $50,000 in present and future medical expenses. **ECF No. 1** at ¶¶ 24-25. Defendants put in doubt plaintiff's "objective good faith" in calculating these valuations.[1] **ECF No. 20** at 11. They contend that the facts of the case establish, to a legal certainty, that plaintiff's claim does not exceed the $75,000 jurisdictional threshold. *Id.* Their argument, however, is based almost exclusively on a comparison with supposedly analogous, non-verdict damages awards from other state jurisdictions (Tennessee, Utah, Washington, Pennsylvania) and only one from this Court, *Isoris Bango-Sánchez v. Universal Ins. Co.*, No. 15-cv-1299 (MEL) (D.P.R. June 9, 2017).

In making their challenge, defendants do not really contest the factual basis of the relevant allegations in the complaint, making their approach more akin to a facial challenge rather than a factual one. Indeed, they rely on some of the complaint's allegations for their statement of uncontested material facts. *See* **ECF No. 21** at ¶¶ 1-2. But it remains nonetheless

---

[1] "Good faith is measured objectively; the question . . . is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth' more than the jurisdictional minimum." *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012) (citation modified).

true that their principal support comes from evidence collected through the discovery process that is extrinsic to the complaint, such as expert medical reports and plaintiff's deposition testimony. *Id.*, at ¶¶ 3-9. On the other hand, it is notable that plaintiff herself actually admits many of their proposed facts, *id.*, at ¶¶ 1, 5, 6, 8, 9, and only qualifies the others rather than deny them, *id.*, at ¶¶ 2, 3, 4, 7. In essence, there is little in the sense of an actual challenge to plaintiff's factual damages allegations. Defendants do not challenge the existence of damages or the allegations of causation. The only question posed by their motion is whether plaintiff's alleged damages can be said, in good faith, to exceed $75,000 when considering damages awarded to comparable plaintiffs in other cases. That does not require much, if any, fact-finding from the Court's part.

For this reason, and as a threshold matter, the Court finds it unnecessary to decide whether Rule 12(b)(1) or 56 should govern the fact-finding as regards defendant's motion. *Cf.* Memorandum and Order, *Castro-De Jesús v. Nieves-Olabarrieta*, No. 24-cv-1081 (PAD) (D.P.R. Apr. 16, 2026), at ECF No. 60 at 2 (analyzing self-styled "motion for summary judgment" challenging jurisdictional amount under Rule 12(b)(1) standard). In factual challenges under Fed. R. Civ. P. 12(b)(1), "the plaintiff's jurisdictional averments are entitled to no presumptive weight[,] and the court must address the merits of the jurisdictional claim by resolving the factual dispute[.]" *Valentín*, 254 F.3d at 363 (citing *García v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). Under this standard, the Court may "order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."

*Id.*, at 363-64 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)). But even if, in theory, this standard is less favorable to plaintiff than the Rule 56 standard, where she would benefit from the drawing of reasonable inferences as the non-movant, she would not be prejudiced in any significant way. The Court would nonetheless find the relevant facts much as plaintiff proposes in her opposing statement of material facts and additional statement of facts. **ECF No. 22-1**.[2]

Nonetheless, once a jurisdictional amount allegation is challenged, it is axiomatic that it falls on the plaintiff to establish "with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (further citations omitted)). Here, plaintiff's principal response to defendants' motion was to submit a personal affidavit attesting to the direct aftermath of her injury, the medical treatments she underwent, and the lingering effects the injury still has on her daily life. *See* **ECF No. 22-2**.

[2] The Court has considered whether an amount-in-controversy challenge implicates "the elements of the plaintiff's cause of action" such as to require summary judgment-style fact-finding. *Torres-Negrón*, 504 F.3d at 163. Any tort claim under Puerto Rico law requires evidence of physical or emotional injury. *See Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 49 (1st Cir. 2007). However, the disputed question here is not whether plaintiff suffered an injury but whether it is a legal certainty that her recoverable damages do not exceed $75,000. The Court sees this question as qualitatively different from a merits question.

**A. Plaintiff's factual showing.**

This is the picture plaintiff paints. She was on vacation on January 18, 2024, when she unknowingly stepped in an uncovered water meter box located in a sidewalk on Loíza Street in San Juan, Puerto Rico, stumbling to the ground and injuring her ankle. She did not immediately seek medical assistance, but she entered a nearby restaurant to put her foot up and apply ice to her ankle, which was swollen and giving her pain. She was able to limp her way to a friend's apartment two blocks away. Plaintiff took over-the-counter medication for the pain and continued to apply ice pads to the ankle until, on January 29, she sought medical attention. Dr. Julieta Montilla prescribed anti-inflammation medication and ordered X-rays images of her ankle. The images demonstrated that plaintiff had suffered an avulsion fracture at the tip of the lateral malleolus and she was referred to Dr. Edwin Rosado, an orthopedic surgeon. Dr. Rosado evaluated her on February 20, 2024, and placed her in a cam boot for six weeks, with a recommendation that she transition into an ankle brace after that period. Plaintiff was barely able to walk or enjoy her stay in Puerto Rico.

Plaintiff returned to her home in Los Angeles, California, on March 7, 2024. She had not returned earlier for fear that she would not be able to handle her luggage due to her injury. Prior to her trip to Puerto Rico, she had injured her right hip handling heavy luggage, an injury for which she had been prescribed physical therapy that she was supposed to begin after her vacation. She had been prescribed Naproxen for her pain, which she continued taking after the ankle injury.

On March 18, 2024, plaintiff was treated by Dr. Jonathan Blau, an orthopedic surgeon. He removed her cam boot and put her right foot in a lace-up ankle brace. He also ordered her to take physical therapy for her ankle, which she began on April 24, 2024, after her insurance provider approved it. Plaintiff had a follow-up appointment with Dr. Blau on May 17, 2024, by which time she asserts that her ankle injury and continuous wearing of the cam boot and ankle brace aggravated her existing pain and discomfort from her prior hip injury. Dr. Blau prescribed more physical therapy for her right ankle and hip, and prescribed Meloxicam for the pain and swelling in the ankle and Omeprazole for the acid reflux the medication caused. In total, plaintiff underwent thirty-tree physical therapy session with Dr. Víctor Santos, starting on April 24, 2024, and up to March 10, 2025.

On April 28, 2025, plaintiff was evaluated by Dr. Orlando S. Fernández, an orthopedic surgeon. Dr. Fernández produced a report in which he observed that plaintiff had a "normal and non-antalgic" gait with "normal stride length and gait velocity." He also noted that she did not exhibit hip or groin discomfort. Dr. Fernández assigned plaintiff a 1% whole person permanent impairment degree in accordance with the American Medical Association Guide to Evaluation of Permanent Impairment.

Plaintiff asserts that she is presently unable to walk as far as she used to without aggravating her pain, that she finds it difficult to walk to her home with groceries, that driving for more than a couple of hours is a big challenge for her, and that her right side, from her hip to her ankle, often feels like it wants to roll under towards her inside when she walks. She also

asserts that the wearing of the cam boot changed her gait and has caused her back to misalign, causing feelings of tightness and knots in her back as well as her right ankle, requiring daily stretching and massages. Household work, such as yardwork, unloading the dishwasher, and cleaning is more difficult because squatting takes a toll on her hip and ankle, and she feels stiffer after sitting before a computer for long periods of time. Weather conditions (i.e., low barometric pressure, rain, cold) cause her discomfort.

**B. The comparable cases.**

One way (but not the exclusive way) for a plaintiff to establish that the amount in controversy exceeds $75,000 is "taking notice of amounts recovered by plaintiffs in similar cases in a similar locality . . . ." *Stewart*, 356 F.3d at 339. In that vein, plaintiff rejected the non-verdict state court awards proposed by defendants as viable comparables, reasoning that relying on them was akin to resorting to Puerto Rico non-jury cases, a practice which the First Circuit has disagreed with. *See* **ECF No. 22** at 9-10 (quoting *Stewart*, 356 F.3d at 339). Plaintiff instead focused on what she says are comparable federal cases from this District Court where juries rendered awards of more than $75,000 in torts cases under Puerto Rico law. *See, e.g.*, *Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288 (1st Cir. 1999); *Smith v. Kmart Corp.*, 177 F.3d 19 (1st Cir. 1999); *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480 (1st Cir. 1994); *González-Cabrera v. Simon Property Grp, L.P.*, No. 11-cv-1136 (CCC) (D.P.R. Sept. 16, 2013); *Rivera-Lane v. CBF Dev. Corp.*, No. 10-cv-1359 (JAF-JP) (D.P.R. Oct. 4, 2011); *Rodríguez v. Señor Frog's de la Isla, Inc.*, No. 05-cv-2250 (ADC) (D.P.R. Dec. 11, 2008); *Santos v. Wyndham Condado Plaza Hotel and Casino*, No. 04-cv-

1458 (JAF) (D.P.R. May 24, 2005), *aff'd sub nom. Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59 (1st Cir. 2006); *Raybourn v. San Juan Marriott Resort & Stellaris Casino*, 259 F. Supp. 2d 110 (D.P.R. 2003); *Torres v. KMart Corp.*, 233 F. Supp. 2d 273 (D.P.R. 2002).

Of these, plaintiff maintains that *González-Cabrera* is the most analogous. The plaintiff there, Ms. González, alleged to have tripped on a pothole in the parking lot of a shopping mall and injured her ankle, suffering a right foot fifth metatarsal fracture and a right ankle sprain/avulsion fracture tip of the lateral malleolus. She sued the owner and operators of the shopping mall for, among other things, her physical and emotional damages under Puerto Rico's general tort statute. Her expert assigned her 4% whole person impairment, while the defendants' expert assigned only 2%. The Court there denied a motion to dismiss for lack of subject-matter jurisdiction similar to the one before the Court here, premised on a challenge to the amount in controversy. *González-Cabrera*, No. 11-cv-1136 (CCC), at ECF Nos. 25, 35. At the conclusion of the trial, a jury awarded Ms. González $157,250.00 in damages. *Id.*, at ECF No. 111. That judgment was rendered on September 16, 2013. For purposes of illustrating the time-value of that amount, it would be equivalent to $224,252.96 as of July 2026 according to the U.S. Bureau of Labor Statistics. *See CPI Inflation Calculator*, United States Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last visited Sept. 9, 2026).

Plaintiff acknowledges that "there are minor differences" between her case and González-Cabrera, namely, the latter's additional metatarsal fracture and the difference in impairment degrees. **ECF No. 22** at 16. But plaintiff is not required to find a carbon-copy of her

case to establish objective good faith. She is only required to establish that the law does not bar her from recovering more than $75,000. In the Court's view, *González-Cabrera* is sufficiently analogous to discard the possibility that she would not be entitled to recovery in excess of the jurisdictional amount.

Regarding *Isoris Bango-Sánchez v. Universal Ins. Co.*, No. 15-cv-1299 (MEL) (D.P.R. June 9, 2017), defendants cite this case to highlight how the magistrate judge, in denying an amount-in-controversy jurisdictional challenge, nonetheless considered a less than 3% whole-person impairment a "close call" and recognized that a jury "may well return a verdict below the jurisdictional threshold . . . ." **ECF No. 20** at 13. But plaintiff responds by pointing out that the degree of impairment is but "one of many components of a damages claim." **ECF No. 22** at 18. She then compares her injury and road to physical recovery with that of the plaintiff in Bango-Sánchez, concluding:

> . . . Mr. Bango . . . did not suffer any fractures, never received any physical therapies or extended medical treatment. His treatment was limited to a visit to the hospital the day after the accident, where his neck was immobilized in a "cervical collar" and he received three epidural injections to his neck.

*Id.*, at 19. In contrast, according to her sworn statement (**ECF No. 22-2**), plaintiff here suffered a bone fracture that required wearing a cam boot and later a lace-up ankle brace for several months; she also underwent dozens of physical therapy sessions, as prescribed by specialist doctors; and she has seen specialists to treat her ongoing pain. The Court is of the view that, if

the damages in *Bango-Sánchez* were sufficient to meet the amount-in-controversy requirement, plaintiff's claimed damages should too.[3]

## IV. Conclusion

For these reasons, the Court **DENIES** defendants' motion at **ECF No. 20**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this ___th day of September 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

[3] Nevertheless, the Court finds it proper to caution plaintiff that defeating the jurisdictional challenge provides no assurance that her alleged damages exceed $75,000. Her showing here was sufficient to nudge her claims past the jurisdictional threshold under the applicable standard, but that is all. *Cf. Duchesne v. Am. Airlines, Inc.*, 758 F.2d 27, 29 (1st Cir. 1985) ("[W]hile it seems unlikely that she will recover so much, we cannot say that it is legally certain. . . . While some of what she alleges may be contradicted at trial, her case depends substantially upon the extent to which the jury believes her claim of pain and suffering.").